UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KEVIN L. BLAKE,

    Plaintiff,

v.                                            Case No. 3:23cv11748-TKW-HTC

K. YOUNG, et al.,

    Defendants.

_____/

ORDER and
REPORT AND RECOMMENDATION

Plaintiff Kevin L. Blake, a prisoner proceeding *pro se* and *in forma pauperis*, has filed an amended civil rights complaint under 42 U.S.C. § 1983 relating to a series of events at Santa Rosa Correctional Institution ("SRCI"). ECF Doc. 8. After reviewing the complaint, the undersigned concludes it fails to state a claim as to Defendants Carr, Hill, and O'Neill, but the First Amendment retaliation claim is sufficient to be served on Defendant K. Young.

I.    **Background**

Plaintiff's complaint names four employees of SRCI as Defendants: (1) Officer K. Young; (2) Lieutenant J. Carr; (3) Sergeant K. Hill; and (4) Officer B. O'Neill. ECF Doc. 8 at 1-3, 14. The amended complaint sets forth the following

relevant factual allegations, which are accepted as true for purposes of this Order and Report and Recommendation.

At lunchtime on April 14, 2023, Officer Young deprived Plaintiff of food by locking his tray in the security box of his cell. When Plaintiff asked if he would be given his lunch tray, Young told Plaintiff to "suck his dick." As lunch was ending and Officer Lally was collecting trash, Plaintiff asked for his tray; Lally refused, stating "I'm not going to get involved with you and Young but you know what you have to do if you want your food." Plaintiff perceived this statement as confirming that if he performed oral sex on Young, he would receive his food. After the 3:30 p.m. shift change, Plaintiff received his tray but he was unable to eat most of the food because it was covered in ants. Plaintiff filed a Prison Rape Elimination Act ("PREA") grievance against Young and Lally for sexual harassment and for denying him food.

On the morning of April 24, Young and Sergeant Hill escorted Plaintiff to the nurse's office for a PREA assessment. During the assessment, the nurse informed Young and Lally of the allegations Plaintiff made against them. Young stated, "apparently I was trying to get my dick sucked"; Lally added, "and I guess I was trying to watch." As the assessment was ending, Young asked Plaintiff, "what's with you and dick?" Plaintiff filed another PREA grievance against Young based on his comments in the nurse's office.

On the morning of April 26, Young came to Plaintiff's cell and falsely stated it was in disarray. Plaintiff asked Young to stop harassing him, stating "he was just doing this because the Plaintiff wrote two [PREA] grievances on him." After Young departed, Plaintiff immediately wrote an informal grievance against Young.

Between 8:15 and 8:45 a.m., Young returned and ordered Plaintiff to submit to hand restraints in preparation for being placed on property restriction. Young refused to provide a reason for the restriction. Plaintiff did not comply with Young's order, hoping another officer would be called and intervene. Officer O'Neill and Sergeant Hill arrived but "refused to listen"; instead, they advised Plaintiff to comply with property restriction procedures. Plaintiff declined and insisted on speaking with the dorm lieutenant. Lieutenant Carr joined Young, O'Neill, and Hill. Plaintiff explained to Carr that Young was trying to place him on property restriction in retaliation for the PREA grievances he filed. Carr "disregarded" the allegations and placed Plaintiff on camera for a potential use of force. Carr stated for the camera that "Plaintiff was being given a final order to cease his disruptive behavior of kicking his cell door and yelling on the wing and to submit to hand restraints for a cell search." After explaining "everything that transpired" and that he had not been disruptive, Plaintiff agreed to submit to hand restraints because Carr stated "it was only a cell search." After Plaintiff exited his cell, Carr had him placed on property

restriction. When Plaintiff asked Carr why he was being placed on property restriction, Carr told him it was because his cell was in disarray.

Plaintiff reentered his cell; as his handcuffs were being removed, he "snatched his arm through the box taking the keys with him." Carr then authorized the use of chemical agents. Plaintiff unsuccessfully tried to use his mattress to block the chemical agents, which caused a burning sensation. Plaintiff subsequently agreed to comply with decontamination procedures. After decontaminating in the shower, Nurse Etheridge performed a post-use-of-force examination and a PREA assessment. Plaintiff was then escorted back to his cell, "which had not properly been decontaminated except for the floor being mopped." Although O'Neill told Plaintiff he would bring Plaintiff supplies to clean the cell, he never did. Thus, Plaintiff had "to clean his cell with his boxers, leaving him naked."

Between 11:00 and 11:30 a.m., Sergeant Hill placed an empty vegan lunch tray in Plaintiff's security box but denied him access to it by leaving the box closed. When O'Neill was collecting trash, he opened Plaintiff's box, allowing him access to the tray. Plaintiff showed the empty tray to O'Neill and asked if he would receive his food but O'Neill ignored him.

On April 27, Officers Stroud and Brett placed a lunch tray in Plaintiff's security box but denied him access to it. When Young came around to collect trash, Plaintiff asked if he would receive his tray; Young grabbed the tray and juice out of

Plaintiff's box and threw it in the trash. Plaintiff began "flooding his cell and popping the sprinkler in order to get [Lieutenant Carr]." When Carr came to the dorm, he refused to speak with Plaintiff about his issues or intervene.

On the morning of May 1, Plaintiff was removed from his cell and placed in the shower stall. After Plaintiff's lunch tray was placed in his cell's security box, he asked Young and Lally to let him eat lunch in the shower, but they refused. When Young came around to collect trash, he discarded the lunch tray from Plaintiff's security box. Plaintiff broke the light in the shower in an effort to speak with the dorm lieutenant and explain what happened that morning. Carr subsequently spoke with Plaintiff but disregarded his complaints.

Plaintiff "knew the next step would be for him to be placed on camera for a potential use of force so he attempted to toss his envelope full of legal mail to an inmate in the first shower just in case he was sprayed with chemical agents." Plaintiff, however, threw the envelope too far; Officer Young later collected the envelope from the ground but never returned it. Lieutenants Carrier and Carr, and Officers Young, Lally, and O'Neill placed Plaintiff on camera for a potential use of force. After Plaintiff described the events of the previous two weeks for the camera, he complied with staff orders. He "was stripped down to his boxers and escorted back to his cell."

Based on the foregoing, Plaintiff alleges: (1) Officer Young violated his First and Eighth Amendment rights by retaliating against him and depriving him of food; and (2) Lieutenant Carr, Sergeant Hill, Officer Young, and Officer O'Neill violated his Eighth Amendment rights by using excessive force and failing to intervene. ECF Doc. 8 at 7, 21. He seeks damages, as well as declaratory and injunctive relief. *Id.*

## II.    Legal Standard

Because Plaintiff is a prisoner proceeding *in forma pauperis* and seeking relief from government employees, the Court must dismiss his complaint, or any portion thereof, if it determines it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). To state a claim, Plaintiff must plead factual content which allows the Court to draw the reasonable inference the Defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must liberally construe Plaintiff's *pro se* allegations, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. Discussion

#### A. Denial of Food

Plaintiff alleges the Defendants violated the Eighth Amendment by depriving him of food. Prisons must provide basic life necessities, such as adequate food, but only "extreme" deprivations of those basic life necessities constitute Eighth Amendment violations. *Robbins v. Robertson*, 782 F. App'x 794, 803 (11th Cir. 2019) (citations omitted). Here, Plaintiff alleges he was denied lunch on only four days—April 14, April 26, April 27, and May 1. However, he does not allege missing those meals resulted in any adverse impact on his health, and the denial of four meals over a 17-day period is not serious enough to violate the Eighth Amendment. *See Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) (affirming dismissal for failure to state a claim when inmate alleged he was routinely deprived of lunch "five days per week for about five months" but was not "deprived of the two other daily meals" and did not allege "physical harm from the deprivation" which "posed an unreasonable risk of serious damage to his health"); *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (finding it "doubtful" a prisoner who "missed about fifty meals in five months" "was denied anything close to a minimal measure of life's necessities" and noting that "[m]issing a mere one out of every nine meals is hardly more than that missed by many working citizens over the same period").

Plaintiff, therefore, cannot state an Eighth Amendment claim based on the deprivation of food.

### B. Excessive Force

Plaintiff also sues Defendants for excessive force. In Eighth Amendment excessive force claims, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In determining whether force was applied maliciously and sadistically to cause harm, a court considers: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted upon the prisoner; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

The Court assumes Plaintiff's excessive force claim is based on the April 26 application of chemical agents, as force was not used on any other day described in the amended complaint. However, considering the *Whitley* factors, Plaintiff's allegations do not support an excessive force claim. First, Plaintiff's actions justified the use of force. Plaintiff admits that after he was placed on property restriction and

as his hand restraints were being removed, "he snatched his arm through the box, taking the keys with him." ECF Doc. 8 at 16. "As a general matter, prison officials are authorized to use force when a prisoner fails to obey an order" and pepper spray "is an accepted non-lethal means of controlling unruly inmates." *Jacoby v. Mack*, 755 F. App'x 888, 898 (11th Cir. 2018) (citation omitted). And an inmate's possession of a handcuff key poses a threat which justifies the use of force. *See Harvard v. Beaudry*, 2014 WL 4626016, at *7 (N.D. Fla. Sept. 12, 2014) (finding prison official was justified in using force to regain control of handcuff key because inmate could use the key to harm himself or threaten institutional security).

Second, because chemical agents are "designed to be disabling without causing permanent physical injury and [are] a reasonable alternative to escalating a physical confrontation," their use is not disproportionate to the need to bring an uncooperative inmate into compliance and regain control of a handcuff key. *See Jacoby*, 755 F. App'x at 898.

Third, Plaintiff alleges the chemical agents caused him to experience a burning sensation. The minimal and temporary extent of Plaintiff's injury does not support a finding of excessive force. Lastly, prison officials made efforts to temper the severity of their use of force by providing Plaintiff with a decontamination shower and post-use-of-force examination by a nurse.

Considering the above factors, Plaintiff's allegations do not show chemical agents were used maliciously and sadistically to cause him harm. Instead, the allegations indicate chemical agents were used in a good-faith effort to regain control of the handcuff key. Thus, Plaintiff has failed to state an excessive force claim against any Defendant.[1]

### C. First Amendment Retaliation

Plaintiff alleges Defendants Carr, Hill, and O'Neill "failed to intervene" to stop the retaliation initiated by Defendant Young. Essentially, Plaintiff alleges Carr, Hill, and O'Neill engaged in retaliation along with Young. Specifically, Plaintiff faults: (1) Carr, Hill, and O'Neill for helping Young place him on property restriction on April 26; (2) Hill and O'Neill for not serving him lunch on April 26; (3) Carr for not ensuring he received food after Young threw away his lunch tray on April 27 and May 1. Thus, Plaintiff's "failure to intervene" claims against Carr, Hill, and O'Neill are more appropriately characterized as First Amendment retaliation claims.

---

[1] Plaintiff suggests he would not have been sprayed with chemical agents if the Defendants had not deprived him of food and placed him on property restriction because he would not have snatched his arm through the cell flap and taken the handcuff key. ECF Doc. 8 at 17. However, Plaintiff's decision to snatch his arm through the cell flap and take the handcuff key destroys any causal link between the Defendants' actions and the use of the chemical agents. *See Dixon v. Burke Cnty., Ga.*, 303 F.3d 1271, 1275 (11th Cir. 2002) ("The causal relation does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers.").

To prevail on a First Amendment retaliation claim, an inmate must establish: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citation omitted). "The causal connection inquiry asks whether the defendants were subjectively motivated to discipline because [the inmate] complained of some of the conditions of his confinement." *Id.* at 1278 (citation omitted).

Here, Plaintiff does not allege any facts suggesting Carr, Hill, or O'Neill were subjectively motivated to retaliate against him for his grievances against Young.[2] First, Plaintiff never specifically alleges O'Neill was aware Plaintiff had filed a grievance against Young. Second, while Plaintiff indicates Carr and Hill were aware of the grievances against Young, Plaintiff did not complain of misconduct by either Carr or Hill in the April 18 or April 24 grievance, and Plaintiff does not allege any facts from which the Court can infer Carr or Hill had a reason to retaliate against Plaintiff.[3] *See Thomas v. Lawrence*, 421 F. App'x 926, 929 (11th Cir. 2011)

---

[2] The relevant grievances are attached to the original complaint. *See* ECF Doc. 1 at 28-31.
[3] Furthermore, Plaintiff indicates Young and Carr were responsible for placing him on property restriction on April 26. Thus, neither Hill nor O'Neill could be liable for that allegedly retaliatory act. Likewise, on May 1, Carr spoke with Plaintiff only after Young allegedly threw his lunch tray in the trash, so Carr could not be liable for Young's action.

Case No. 3:23cv11748-TKW-HTC

("Thomas's grievance did not complain about any staff member except for Diaz, and his complaint failed to allege any facts that would suggest that any of the other named defendants had a reason to retaliate against him for filing the grievance against Diaz. Because Thomas merely concludes that each of the defendants retaliated against him for filing the grievance by approving of Diaz's disciplinary report, his claims against the remaining defendants do not comply with the requirements of Rule 8."); *Glenn v. Gillis*, 2013 WL 4096206, at *7 (N.D. Fla. Aug. 13, 2013) ("The lack of complaints about or grievances filed against a particular defendant undermines a claim of retaliatory motive, if nothing else is offered as proof of such a motive.").

Also, to the extent Plaintiff seeks to hold Carr liable because he was Young's supervisor, the facts alleged do not support a claim for supervisory liability. To state such a claim, Plaintiff must allege facts sufficient to show Carr "personally participated in the allegedly unconstitutional conduct or … there is 'a causal connection between [his] actions ... and the alleged constitutional deprivation.'" *West v. Tillman*, 496 F.3d 1321, 1328 (11th Cir.2007) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (second alteration in original)). A causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so; when the supervisor's improper custom or policy leads to deliberate

indifference to constitutional rights; or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Id.* at 1328–29.

Here, Plaintiff has not alleged any facts from which it can be reasonably inferred that Carr knew Young would continue to engage in unconstitutional misconduct and that he failed to stop him from doing so. Instead, Plaintiff alleges he told Carr at the time he was being ordered by Young to cuff up for property restriction that Young was retaliating. There is no allegation prior to that day that Carr was aware of Plaintiff's grievance against Young or had any reason to believe the property restriction was retaliatory.[4] Moreover, when Carr got to the cell, Plaintiff admits he was not cooperating or obeying Young's orders and that Carr repeated Young's basis for the property restriction, which was that Plaintiff's cell was in disarray. Similarly, while Plaintiff complains about Carr not listening to him when he was trying to complain about Young on April 27 and May 1, Plaintiff also admits he got Carr's attention by flooding his cell and breaking the light in the shower, respectively. There are simply no facts showing that Carr either personally participated in any retaliation or had knowledge of any continuous or widespread

---

[4] Plaintiff states he later discovered Carr was responsible for investigating his April 24 PREA complaint against Young, but there are no allegations regarding when Carr learned of the April 24 complaint or when Carr commenced his investigation.

Case No. 3:23cv11748-TKW-HTC

retaliatory conduct by Young.[5] *See Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir. 1990) (noting "[u]sing a negligence standard to determine a supervisory official's liability would result in de facto *respondeat superior* liability for the official" and a supervisory official is not liable "unless a reasonable person in his position would know that his own conduct infringed a constitutional right of the plaintiff") (citations omitted).

## IV. Conclusion

After screening Plaintiff's complaint under the PLRA, the undersigned concludes the only claim sufficient to be served is Plaintiff's First Amendment retaliation claim against Officer Young in his individual capacity. The remaining claims are not supported by the facts alleged and, thus, those claims should be dismissed with prejudice.

---

[5] Furthermore, a supervisor should not face liability for simply failing to immediately accede to an inmate's demands when the inmate has engaged in misconduct (refusing an order, flooding a cell, breaking a light) to get the attention of the supervisor. To hold otherwise would disrupt the orderly operation of prisons, including the administration of inmate discipline, and frustrate the purpose of the grievance process, which provides a structured and non-confrontational procedure for inmates to bring their complaints to supervisory officials. *See Pope v. Hightower*, 101 F.3d 1382, 1384 n.2 (11th Cir. 1996) ("Federal courts must scrupulously respect the limits on their role by not thrusting themselves into prison administration; prison administrators must be permitted to exercise wide discretion within the bounds of constitutional requirements."); *Cranford v. Hammock*, 2010 WL 916031, at *8 (N.D. Fla. Mar. 11, 2010) ("A prisoner does not automatically cast doubt upon an institutional decision, nor is the decision 'subject to exhaustive challenge,' solely because he was engaged in a First Amendment right.") (citations omitted).

Accordingly, it is ORDERED:

1. Plaintiff shall have **twenty-one (21) days** from the date of this Order to submit one (1) service copy of the amended complaint, ECF Doc. 8. The service copy must be identical to the amended complaint filed with the Court. This case number should be written on the service copy. Alternatively, and within the same time, Plaintiff may submit $11.00 for the Court to make the service copy of his 22-page amended complaint.

And it is RECOMMENDED:

1. That Plaintiff's Eighth Amendment deprivation of food claim be DISMISSED WITH PREJUDICE.

2. That Plaintiff's Eighth Amendment excessive force claim be DISMISSED WITH PREJUDICE.

3. That Plaintiff's First Amendment retaliation claims against Defendants Carr, Hill, and O'Neill be DISMISSED WITH PREJUDICE.

4. That this case be referred to the undersigned for further proceedings on Plaintiff's First Amendment retaliation claim against Officer Young in his individual capacity.

At Pensacola, Florida, this 11th day of August, 2023.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

Case No. 3:23cv11748-TKW-HTC

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.