UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KEVIN L. BLAKE,

    Plaintiff,

v.                            Case No. 3:23cv11748-TKW-HTC

K. YOUNG,

    Defendant.
_____/

REPORT AND RECOMMENDATION

Before the Court is Defendant's motion to dismiss, Doc. 17, Plaintiff's amended complaint, Doc. 8, and Plaintiff's response in opposition, Doc. 28. After reviewing the parties' submissions and the relevant law, the undersigned concludes the motion should be GRANTED. Also, because Plaintiff was already given an opportunity to amend the complaint, the undersigned finds an additional opportunity to be unwarranted.

**I.**     **Background**

Plaintiff Kevin L. Blake, a prisoner proceeding *pro se* and *in forma pauperis*, filed an amended civil rights complaint under 42 U.S.C. § 1983, alleging Defendant K. Young retaliated against him at Santa Rosa Correctional Institution ("SRCI") for filing grievances. Doc. 8. The amended complaint also included Eighth Amendment excessive force and failure to intervene claims against Young and three

Case 3:23-cv-11748-TKW-HTC    Document 29    Filed 03/11/24    Page 2 of 15

Page 2 of 15

other correctional officers. However, the Court dismissed, at screening, all claims other than the retaliation claim against Young. Docs. 9, 10. As to Young, the amended complaint sets forth the following factual allegations, which are accepted as true for purposes of this Report and Recommendation.

At lunchtime on April 14, 2023, Defendant Young locked Plaintiff's food tray in the security box of his cell. When Plaintiff asked if he would be given his lunch tray, Young told Plaintiff to "suck his dick." As lunch was ending and Officer Lally was collecting trash, Plaintiff asked for his tray; Lally refused, stating "I'm not going to get involved with you and Young but you know what you have to do if you want your food." Plaintiff perceived this statement as confirming that if he performed oral sex on Young, he would receive his food. After the 3:30 p.m. shift change, Plaintiff received his tray but he was unable to eat most of the food because it was covered in ants. Plaintiff filed a Prison Rape Elimination Act ("PREA") grievance against Young and Lally for sexual harassment and for denying him food.

On the morning of April 24, Young and Sergeant Hill removed Plaintiff from his cell and escorted him to the nurse's office for a PREA assessment. During the assessment, the nurse informed Young and Lally of the allegations Plaintiff made against them. Young stated, "apparently I was trying to get my dick sucked"; Lally added, "and I guess I was trying to watch." As the assessment was ending, Young

asked Plaintiff, "what's with you and dick?" Plaintiff filed another PREA grievance against Young based on his comments in the nurse's office.

On the morning of April 26, Young came to Plaintiff's cell and falsely stated it was in disarray. Plaintiff asked Young to stop harassing him, stating "he was just doing this because the Plaintiff wrote two [PREA] grievances on him." After Young departed, Plaintiff immediately wrote an informal grievance against Young.

Between 8:15 and 8:45 a.m., Young returned and ordered Plaintiff to submit to hand restraints in preparation for being placed on property restriction. When Plaintiff asked why he was being placed on property restriction, Young refused to provide a reason, stating "because I said so." Plaintiff did not comply with Young's order; he tried to speak to Officer O'Neill and Sergeant Hill about the situation but they "refused to intervene."

Lieutenant Carr then joined Young, O'Neill, and Hill. Plaintiff explained to Carr that Young was trying to place him on property restriction in retaliation for the PREA grievances he filed. Carr "disregarded" the allegations and placed Plaintiff on camera for a potential use of force. Carr falsely stated for the camera that "Plaintiff was being given a final order to cease his disruptive behavior of kicking his cell door and yelling on the wing and to submit to hand restraints for a cell search." After explaining "everything that transpired" and that he had not been disruptive, Plaintiff agreed to submit to hand restraints because Carr stated "it was

only a cell search." However, after Plaintiff exited his cell, Carr had him placed on property restriction. When Plaintiff asked Carr why he was being placed on property restriction, Carr told him it was because his cell was in disarray.

On April 27, Officers Stroud and Brett placed a lunch tray in Plaintiff's security box but denied him access to it. When Young came around to collect trash, Plaintiff asked if he would receive his tray; Young grabbed the tray and juice out of Plaintiff's box and threw it in the trash.

On the morning of May 1, Plaintiff was removed from his cell and placed in the shower stall. After Plaintiff's lunch tray was placed in his cell's security box, he asked Young and Lally to let him eat lunch in the shower, but they refused. When Young came around to collect trash, he discarded the lunch tray from Plaintiff's security box. Plaintiff broke the light in the shower in an effort to speak with the dorm lieutenant and explain what happened that morning. Carr subsequently spoke with Plaintiff but disregarded his complaints.

Plaintiff "knew the next step would be for him to be placed on camera for a potential use of force so he attempted to toss his envelope full of legal mail to an inmate in the first shower just in case he was sprayed with chemical agents." Plaintiff, however, threw the envelope too far; Officer Young later collected the envelope from the ground but never returned it. Lieutenants Carrier and Carr, and Officers Young, Lally, and O'Neill placed Plaintiff on camera for a potential use of

force. After Plaintiff described the events of the previous two weeks for the camera, he complied with staff orders. He "was stripped down to his boxers and escorted back to his cell."

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must liberally construe Plaintiff's *pro se* allegations, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III. Discussion

### A. First Amendment Retaliation

To prevail on a First Amendment retaliation claim, an inmate must establish: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citation omitted). "The causal

connection inquiry asks whether the defendants were subjectively motivated to discipline because [the inmate] complained of some of the conditions of his confinement." *Id.* at 1278 (citation omitted). A district court may dismiss a § 1983 First Amendment retaliation claim if the complaint fails to sufficiently allege causation. *Turner v. Williams*, 2020 WL 1904016, at *11 (M.D. Fla. Apr. 17, 2020) ("Absent anything beyond conclusory allegations, Turner fails to allege a causal link between his protected speech and Nassau County's alleged retaliatory actions."). Furthermore, courts "must carefully scrutinize" retaliation claims to ensure "that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995); *see also Dawes v. Walker*, 239 F.3d 489, (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("courts must approach prisoner claims of retaliation with skepticism and particular care" because they: (1) "are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated"; and (2) "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration," as "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act").

Case No. 3:23cv11748-TKW-HTC

Here, Defendant Young argues Plaintiff has failed to meet the second and third elements of a retaliation claim. As to the second element, according to Plaintiff, after he filed grievances against Young, Young had him placed on property restriction and refused to provide him lunch on April 27 and May 1.[1] Young argues such alleged retaliatory conduct, even if true, was not severe enough to deter a person of ordinary firmness from engaging in protected speech. Doc. 17 at 6-7. The undersigned agrees.

First, Young's refusal to provide Plaintiff with lunch on two occasions would not deter a person of ordinary firmness from engaging in protected speech.[2] *See Williams v. Hawn*, 2023 WL 2854301, at *5 (W.D. Mich. Jan. 19, 2023), *report and recommendation adopted*, 2023 WL 2607533 (W.D. Mich. Mar. 23, 2023) ("Courts within this district have held that missing a single or occasional meal does not amount to adverse action sufficient to sustain a First Amendment retaliation claim."); *Amaker v. Annucci*, 2016 WL 5720798, at *5 (S.D.N.Y. Sept. 30, 2016), *aff'd,* 721 F. App'x 82 (2d Cir. 2018) ("Courts have repeatedly held that occasional

---

[1] Plaintiff was also denied lunch on April 14 and April 26, but the April 14 denial of food occurred before Plaintiff's protected speech and the allegations do not indicate Defendant was involved in the April 26 denial of food.

[2] While the court in *Taylor v. Crews*, 2015 WL 5042721, at *7-8 (N.D. Fla. July 27, 2015), *report and recommendation adopted*, 2015 WL 5042805 (N.D. Fla. Aug. 26, 2015), found that refusing to let an inmate eat breakfast one morning could deter a person of ordinary firmness from engaging in protected speech, that conduct was combined with the defendant yelling at the inmate in front of other inmates for filing a grievance.

deprivations of food are de minimis and do not rise to the level of adverse actions for purposes of a retaliation claim.").

Second, as will be discussed more below, because Plaintiff appealed the decision to place him on property restriction to Carr, there is no causal connection between the property restriction and Plaintiff's grievance. Thus, it is irrelevant whether placing an inmate on property restriction would deter a person of ordinary firmness from engaging in protected speech.

Third, while the question of whether the adverse action would deter a person of ordinary firmness from exercising his First Amendment rights is an objective one, whether the plaintiff continued to file grievances may bear on that determination. *Mitchell v. Thompson*, 564 F. App'x 452 (11th Cir. 2014) (the fact that plaintiff "continued to file grievances against [the official], even after she had denied his first grievance, [] illustrates that a person of ordinary firmness would likely not be deterred from engaging in such speech"). Here, Plaintiff not only continued to file grievances against Young but did so "immediately" after Young's alleged retaliation. *See* Doc. 1 at 33-39 (grievances Plaintiff filed against Young on April 26, May 3, and May 15). Thus, the undersigned agrees with Defendant that Plaintiff fails to meet the second element of a retaliation claim.

As stated above, Defendant also suggests Plaintiff's allegations fail to satisfy the third element of a retaliation claim—that there is causal connection between the

retaliatory action and the protected speech. Doc. 17 at 7-8. The undersigned, once again, agrees.

The causal connection inquiry asks whether the defendant was subjectively motivated to carry out the adverse action because the plaintiff engaged in protected activity. *Smith*, 532 F.3d at 1278. Nowhere in the amended complaint, however, does Plaintiff allege that Young knew about the grievances he filed against him before Young stated Plaintiff's cell was in disarray. And nowhere in the amended complaint does Plaintiff allege any facts showing that Young denied him lunch or told him to cuff up *because* Plaintiff had filed grievances against him.

Instead, Plaintiff simply alleges, in conclusory fashion, that Young's conduct was taken in retaliation. Such conclusory allegations, however, are not sufficient to support a retaliation claim. *See Daniel v. McDonough*, 2008 WL 5156689, at *3 (N.D. Fla. Dec. 9, 2008) ("Plaintiff offers no specific factual basis for his conclusion that the grievance is what motivated Plowman to destroy his property. Therefore, to the extent plaintiff intended to plead a retaliation claim against Plowman, that claim is due to be dismissed."); *Adderly v. Noriega*, 2021 WL 288967, at *2 (M.D. Fla. Jan. 28, 2021) ("Adderly fails to plausibly plead the requisite causation, and the Court dismisses the First Amendment retaliation claim."); *Jones v. Salley*, 2013 WL 5567321, at *4 (M.D. Fla. Oct. 9, 2013) (allegation that defendant took plaintiff out of the protected custody dorm and placed him in the general population dorm in

retaliation for the grievances plaintiff filed on defendant was not enough to survive a motion to dismiss).

Moreover, while Young told Plaintiff to cuff up because he was going to be placed on property restriction, Plaintiff appealed Young's decision to Lieutenant Carr, who nonetheless decided to place Plaintiff on property restriction. The appeal to Carr "broke" the causal connection between Plaintiff's grievance and Young's conduct. In other words, even if Carr decided to place Plaintiff on property restriction for the same reason as Young – because the cell was purportedly in disarray – Carr's decision was independent of any retaliation by Young.[3] *See Thomas v. Lawrence*, 421 F. App'x 926, 929 (11th Cir. 2011) (finding "any inference of a causal connection between Thomas's grievance and the alleged retaliation by Diaz is broken because Diaz was required to respond to Thomas's grievance, because Diaz complied with Florida law, and *because a party other than Diaz determined or confirmed that Thomas should receive a disciplinary report*") (emphasis added).

Because Plaintiff has failed to allege facts sufficient to show that he suffered an adverse action from Young that would deter a person of ordinary firmness from exercising his First Amendment rights, and also failed to allege facts sufficient to

---

[3] This Court previously dismissed the retaliation and supervisory liability claims against Carr arising out of Carr's decision to place Plaintiff on property restriction. *See* Docs. 9, 10.

Case No. 3:23cv11748-TKW-HTC

show that Young was subjectively motivated to take adverse action against Plaintiff for filing grievances against Young, the undersigned finds Plaintiff's claim against Young should be dismissed.[4]

### B. Plaintiff's Damages

Defendant also seeks dismissal of Plaintiff's claim for compensatory and punitive damages and argues Plaintiff has not sought nominal damages. Because the undersigned finds Plaintiff's retaliation claim should be dismissed, Plaintiff would not be entitled to damages. Nonetheless, the undersigned will address Defendant's damages arguments. For the reasons set forth below, the undersigned agrees, even if the Plaintiff has stated a claim for retaliation against Young, Plaintiff is not entitled to compensatory damages. He would, however, be entitled to nominal and potentially punitive damages.

#### 1. Compensatory Damages

Defendant argues Plaintiff cannot recover compensatory damages under 42 U.S.C. § 1997e(e) because he did not suffer a more than de minimis injury. Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C.

---

[4] Defendant also argues Plaintiff's retaliation claim should be dismissed because he is entitled to qualified immunity. The Court need not address this argument.

Case No. 3:23cv11748-TKW-HTC

§ 1997e(e). Under § 1997e(e), a prisoner must prove he suffered a more than de minimis physical injury to recovery compensatory damages. *Thompson v. Smith*, 805 F. App'x 893, 900-01 (11th Cir. 2020) (citation omitted). Courts have described a more than de minimis injury as "an observable or diagnosable medical condition requiring treatment by a medical care professional." *Thompson v. Sec'y, Fla. Dep't of Corr.*, 551 F. App'x 555, 557 n.3 (11th Cir. 2014) (quoting *Luong v. Hatt*, 979 F. Supp. 481 (N.D. Tex. 1997)).

Here, Plaintiff does not allege he suffered any physical injury, much less a physical injury which exceeds the de minimis threshold,[5] from Young's alleged retaliatory conduct. Thus, even if the Court were to allow Plaintiff to proceed on his retaliation claim, his claim for compensatory damages is barred by 42 U.S.C. § 1997e(e) and should be dismissed.

    2.    Nominal Damages

Defendant also claims Plaintiff's amended complaint does not request nominal damages. Doc. 17 at 14. However, in addition to compensatory and

---

[5] Plaintiff suggests the fact he was sprayed with chemical agents should be considered when determining whether he suffered a compensable physical injury. Doc. 28 at 5. However, Plaintiff's decision to snatch his arm through the cell flap and take the handcuff key gave prison officials a valid justification for using chemical agents and destroyed any causal link between Defendant's alleged retaliation and the use of the chemical agents. *See Dixon v. Burke Cnty., Ga.*, 303 F.3d 1271, 1275 (11th Cir. 2002) ("The causal relation does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers."). Thus, the effects of the chemical agents cannot be considered as part of either the retaliation or compensable injury analysis.

punitive damages, the amended complaint requests "any additional relief this Court deems just, proper, and equitable." Doc. 8 at 21. The Eleventh Circuit has interpreted similar language as a request for nominal damages. *See Boxer X v. Donald*, 169 F. App'x 555, 559 (11th Cir. 2006) (concluding prisoner "did seek nominal damages when his complaint requested compensatory damages and 'any other relief the court deem[s] appropriate'"); *see also Logan v. Hall*, 604 F. App'x 838, 840 (11th Cir. 2015) ("While a *pro se* plaintiff may not have requested nominal damages specifically in his complaint, in light of the liberal construction afforded *pro se* pleadings, a district court should consider whether such damages are recoverable before dismissing a complaint.") (citing *Hughes v. Lott*, 350 F.3d 1157, 1162-63 (11th Cir. 2003)). Thus, the undersigned finds Plaintiff's amended complaint does request nominal damages.

   3.  Punitive Damages

Defendant also contends Plaintiff's request for punitive damages is barred by the PLRA, which states:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

Case No. 3:23cv11748-TKW-HTC

Case 3:23-cv-11748-TKW-HTC    Document 29    Filed 03/11/24    Page 14 of 15

Page 14 of 15

18 U.S.C. § 3626(a)(1)(A).  Punitive damages are included within the definition of "prospective relief" used in the statute.  *See Johnson v. Breeden*, 280 F.3d 1308, 1325 (11th Cir. 2002), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015).

Defendant attempts to argue punitive damages categorically cannot satisfy the requirements of 18 U.S.C. § 3626(a)(1)(A) because: (1) "'correction' of [a] violation [of a federal right] is accomplished through compensatory damages and punitive damages are, by their nature, never corrective"; and (2) punitive damages cannot be "narrowly drawn," "extend no further than necessary," or be the "least intrusive means," to correct the violation of a federal right.  Doc. 17 at 15-16.  However, Defendant cites no binding precedent which holds § 3626 prohibits the assessment of punitive damages in prison conditions cases.  And the Eleventh Circuit case he does cite, *Johnson*, indicates punitive damages are permitted in prison conditions cases.  280 F.3d at 1325 (finding § 3626's "requirements mean that a punitive damages award must be no larger than reasonably necessary to deter the kind of violations of the federal right that occurred in the case" and "that such awards should be imposed against no more defendants than necessary to serve that deterrent function and that they are the least intrusive way of doing so").  Thus, the current state of the law does not support the conclusion that § 3626 imposes a categorical prohibition on an award of punitive damages.  *See Benton v. Rousseau*, 940 F. Supp.

2d 1370, 1379-80 (M.D. Fla. 2013) (finding prisoner was entitled to $15,000 in punitive damages for violations of his First and Fourteenth Amendment rights).

Accordingly, it is RECOMMENDED:

1. That Defendant's motion to dismiss, Doc. 17, be GRANTED, and this case be DISMISSED for failure to state a claim.

2. That the clerk close the file.

At Pensacola, Florida, this 11th day of March, 2024.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.